**In re Stephanie PIERCE, Debtor.**

**Elbar Investments, Inc., Plaintiff,**

**v.**

**Stephanie R. Pierce, et al., Defendant.**

**Bankruptcy No. 00–37098–H2–13.
Adversary No. 00–3499.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Nov. 25, 2001.

Richard L. Petronella, Houston, TX, for Plaintiff.

Pamela J. Franklin, Houston, TX, for Defendant.

Jennine Yvette Hovell–Cox, Houston, TX, for A.I.S.D. & Beechnut M.U.D.

Mary Daffin, Houston, TX, for Fairbanks Capital Corporation.

James J. Savage, Houston, TX, for Constable Glen Creek.

David Peake, Houston, TX, Chapter 13 Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

WESLEY W. STEEN, Bankruptcy Judge.

In this adversary proceeding, the Court must determine the effect of a judicial (tax) sale of the debtor's homestead that took place only minutes after this bankruptcy case was filed. Without knowledge that the case had been filed, Elbar Investments, Inc. ("Elbar") purchased the Debtor's homestead at the constable's sale for $31,000. The constable has declined to issue a deed to the property until this court determines the effect of the automatic stay. In a motion filed in the main bankruptcy case, Elbar asked the Court to annul the § 362 automatic stay retroactively, to validate the sale. That motion was denied. In this adversary proceeding, Elbar asks the Court to order the constable to issue the deed, asserting that it is a good faith purchaser without knowledge of the bankruptcy filing or of the § 362 stay. Alternatively, Elbar seeks the return of the purchase price, which was deposited in the registry of this Court. By separate order issued this date, the Court orders

the purchase price returned to the constable for delivery to Elbar. The Court concludes that Elbar's "good faith purchaser" status cannot be the basis for validating a postpetition execution sale that violated the automatic stay unless the court annuls the stay retroactively under § 362(d).

### JURISDICTION

This is an adversary proceeding that arises in a case under title 11, arises under title 11 of the United States Code, and involves property of the estate. The United States District Court has jurisdiction under 28 U.S.C. § 1334(b) and (d). By Order dated August 9, 1984, under authority granted by 28 U.S.C. § 157(a), the United States District Court for the Southern District of Texas referred all such proceedings to the bankruptcy judges for the district. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(G), (K), and (O). The bankruptcy judge may hear and may determine core proceedings, 28 U.S.C. 157(b)(1). No party has objected to the exercise of core jurisdiction by the bankruptcy judge.

### FACTS [1]

Unless otherwise indicated, the following findings of fact are made from the testimony at the hearing on Elbar's motion for retroactive relief from the automatic stay and from facts that clearly appear from the pleadings to be undisputed. The conclusions and the decision concerning the motion from relief from the stay are presented here in explanation of that order as

---

1. The procedural status of these disputes is quite complex. In an earlier opinion, the Court attempted to resolve all disputes between the parties, based on an understanding that the facts were essentially undisputed. Elbar pointed out that the Court's decision went further than it should have, procedurally. The Court understands that Elbar wants to establish precedent for a point of law, and therefore the Court reversed earlier orders to allow Elbar to appeal the Court's decision in a way that cleared procedural hurdles. The Court will not revisit all of the procedural complexities of this case, because they are not essential to the decision.

well as in explanation of the judgment resolving this adversary proceeding. No party has suggested that any of those findings and conclusions are incorrect.

Stephanie Pierce ("Debtor") did not pay the 1998 and 1999 taxes assessed against her home. The taxing authorities obtained a judgment and began proceedings to sell the residence at a constable's sale. The Debtor was current on her mortgage payments, but when the mortgagee learned of the pending constable's sale, the mortgagee gave its own notice of foreclosure for nonpayment of taxes. The Debtor then made arrangements with the mortgagee to pay the deficiency. The mortgagee forwarded a check to the Constable.[2] Unfortunately, the mortgagee did not include the name of the Debtor, nor any description of the property. The Constable could not determine which property was involved, so it returned the check to the mortgagee. By that time, the date of the advertised sale had arrived. Minutes *before* the sale, the Debtor filed this bankruptcy case under chapter 13 of the Bankruptcy Code. Without knowledge of the bankruptcy filing, the Constable sold the house to Elbar for $31,000.

There is no evidence that the Debtor filed the case in bad faith. It is uncontroverted that she thought that she had resolved the tax delinquency. There is no indication that the Debtor has filed multiple bankruptcy cases or that she intended to abuse the automatic stay. There is no indication that she knew that she would be unable to complete a chapter 13 plan. In a rare alliance, the mortgagee has joined with the Debtor to object to annulment of the § 362 stay. Thus, this is a rare case in which both the Debtor and her only active creditor *both* seek the same bankruptcy relief. No creditor or other party in interest has requested dismissal or other relief against the Debtor. It is only Elbar, the purchaser of the homestead at the constable's sale, who seeks relief from the effects of the bankruptcy filing.[3]

Elbar had no relationship to the Debtor prior to the date that it tried to buy her house at the constable's sale. Elbar is in the business of purchasing property at foreclosure and tax sales. Its representative, Mr. Bustamente, testified that he reviews over a thousand properties each month, that he attends tax and foreclosure sales each month, and that he buys property at almost every sale. Elbar purchased the Debtor's home at the Constable's sale for $31,000. Neither the Constable[4] nor Elbar had knowledge of the bankruptcy filing *prior to* the sale.

It is not clear when Debtor's counsel contacted the Constable's office to notify him of the bankruptcy filing. There was a suggestion, not supported by convincing evidence at the § 362 hearing, that telephonic notice may have been given about the time of the sale. The Constable's records show that the first *written* communication was *received* on August 3, two days after the sale. The Constable had not yet

---

2. Office of Constable Glen Cheek, Precinct 5.

3. The taxing authorities filed an Amended Answer, Counterclaim and Cross–Claim that asks for disbursement to them of Elbar's $31,000. But none of the taxing authorities have taken an active part in this adversary proceeding or have even filed responses to the motions at issue here. It would appear that their tax liens protect them regardless of the disposition of this adversary proceeding.

4. The Constable's conduct has been exemplary. The records of his office are excellent, and those records clearly show the thorough, careful, thoughtful work of his employees. Counsel for the constable attended the hearing on relief from the stay but indicated that the constable was merely a nominal party and had no interest in the outcome of this case.

issued a deed to the property and had not disbursed the sale proceeds. Elbar had not taken possession of the property. When the Constable learned of the bankruptcy filing, he informed all parties that he would take no further action until directed by court order.

On August 15, 2000, Elbar filed a motion for relief from stay, seeking retroactive relief to validate the sheriff's sale. On the same date, Elbar filed this adversary proceeding, seeking adjudication of the transfer of title. The Constable deposited the $31,000 into the registry of the Court.

While these matters were pending, the bankruptcy case went on. Although the Court concludes that the Debtor did not file the case in bad faith, her prosecution of the case was far from adequate. She failed to attend two § 341 meetings, and she also failed to attend the debtor education class scheduled by the chapter 13 trustee. She did not make all of the payments that her plan required her to make to the chapter 13 trustee. Therefore, on February 20, 2001, at the hearing on the trustee's motion to dismiss, the Court dismissed the case with prejudice to refiling for 180 days. That order was later vacated as erroneously issued.

On May 4, 2001, the Court held a hearing on Elbar's request for termination of the stay. The Debtor testified that she did not receive timely notice of the creditors' meetings or of the education classes because of difficulty in receiving her mail. She testified that her subdivision suffers from persistent, incorrect mail delivery. She testified that she fell behind on her payments to the trustee because she was caring for her aged mother who has Al-

zheimer's disease. She testified that she had extraordinary medical expenses. The Debtor's testimony was uncontroverted.

The Debtor also testified that she now no longer has the expense of her mother's illness and that she has received a pay raise. She testified that she would therefore be able to complete a chapter 13 plan. This testimony was apparently a surprise to everyone except the Debtor. The mortgagee supported reinstatement of the case, and Elbar indicated a willingness to allow the Debtor to re-enter chapter 13, provided that Elbar could continue to prosecute its claim that the tax sale was valid.

## CONCLUSIONS

*The Effect of A Bankruptcy Filing–Bankruptcy Code Section 362*

 There is no dispute that the Debtor's home was property of the estate at the moment that the bankruptcy case was filed.[5] When a bankruptcy case is filed, section 362 of the Bankruptcy Code automatically and immediately imposes a statutory stay of the enforcement of any judgment obtained before the commencement of the case and a stay of any act to enforce any lien against property of the estate. The stay is not a judicial injunction that depends on notice. The stay is effective upon the filing of the case, regardless of notice.[6]

 As pointed out by the Debtor in the motion to dismiss the adversary proceeding, the stay is intended to give the debtor a "breathing spell." *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544 (5th Cir.1983). The stay is intended to benefit

---

5. Bankruptcy Code Section 341.

6. *See In re Calder*, 907 F.2d 953 (10th Cir. 1990), *cited with approval* in *In re Jones*, 63 F.3d 411, 412 n. 3 (5th Cir.1995); *In re Smith*, 876 F.2d 524 (6th Cir.1989). *See also*

*Collier on Bankruptcy*, ¶ 362.02 (15th ed. rev. 1999) ("Formal service of process is not required and no particular notice need be given in order to subject a party to the stay.")

both debtors and creditors by assuring an equitable distribution of the debtor's assets and by preventing a race to the courthouse. *GATX Aircraft Corp. v. MV Courtney Leigh,* 768 F.2d 711, 716 (5th Cir.1985). Although it is very rare to see a creditor object to the court granting relief from the stay, it occasionally happens, and in fact it happened in this case in which the mortgage lender objected to Elbar's motion for relief from the stay.

*Retroactive Relief from the § 362 Automatic Stay*

▉ The bankruptcy court has the power to terminate, to annul, to modify, or to condition the automatic stay.[7] To grant such relief, the Court must find that there is "cause."[8] Annulment of the stay has the effect of eliminating it (or terminating it retroactively).[9]

▉ The Court did not grant Elbar retroactive relief from the stay because the Court did not find that the Debtor filed her case in bad faith or that she intentionally shirked her duties under the Bankruptcy Code. Although the Debtor *in fact* failed to prosecute her case adequately, the Court believes that a decision about *retroactive* relief should ordinarily be based on facts as they existed when the case was filed, not by subsequent events (except to the extent that the subsequent events may serve as evidence of the debtor's state of mind, motive at the time that the case was filed or abuse of the bankruptcy process). In this case, the Court is persuaded by a preponderance of the evidence that the Debtor was in good faith at the time the case was filed. She thought she had resolved the foreclosure and tax delinquencies and simply needed time to sort out the errors that appear to be mostly attributable to the mortgagee. The Court further concluded from uncontroverted evidence, that the Debtor's postpetition defalcations were adequately explained. The Court concludes by a preponderance of the evidence, that the Debtor did not intend to abuse the bankruptcy process.

*Violations of the § 362 Automatic Stay: Void or Voidable*

Elbar, not the Debtor or Chapter 13 Trustee, is the plaintiff in this adversary proceeding. Elbar argues that the Constable's sale is not void, but is voidable. Elbar argues that the Debtor must avoid the sale, and that Bankruptcy Code Section 549 applies to this determination. Therefore, citing § 549(c), Elbar argues that if it is a good faith purchaser, the sale must stand.

In its most recent memorandum, Elbar articulates its request for relief as follows:

Elbar seeks judgment in this adversary that the Constable's sale cannot be avoided under Section 549(c) of the Bankruptcy Code and that Elbar has an interest in the property that either gives Elbar superior title and the right to possession of the property, subject to any right of redemption under Texas law, or a lien interest on the subject property.[10]

In its Second Amended Complaint, Elbar asks, in the alternative, for return of

---

7. Bankruptcy Code § 362(d).

8. *Id.*

9. *See Sikes v. Global Marine, Inc.,* 881 F.2d 176 (5th Cir.1989). "The power to annul authorizes retroactive relief even unto the date of the filing of the petition giving rise to the automatic stay." *Id.* at 178.

10. Elbar Response to Pierce's Motion to Dismiss and Motion for Judgment and Elbar's Motion to Fix Supersedeas and for Stay Pending Appeal.

its purchase money, which was deposited in the registry of the Court.

Elbar cites *Matter of T.F. Stone Company* 72 F.3d 466 (5th Cir.1995) for the proposition that postpetition forced sales for equivalent value cannot be avoided. *Stone* is not apposite. Nowhere in *Stone* is there any indication that the forced sale in that case violated Bankruptcy Code § 362. The decision does not indicate whether the creditor had obtained relief from the automatic stay or whether the tax sale in question simply was not prohibited by the stay for some other reason.[11] Indeed, there is simply no discussion of § 362 in the opinion. The opinion stands for the proposition that the amount received at a properly conducted tax foreclosure sale is presumed to be reasonably equivalent value. *See In re D'Alfonso*, 211 B.R. 508 (Bankr.E.D.Pa. 1997).[12]

■■■■ Elbar mistakes the nature of the relief afforded by section 549. That section does not validate sales to good faith purchasers. Section 549 empowers a *trustee in bankruptcy* to avoid certain post-petition transfers and gives good faith purchasers a defense if the trustee attempts to nullify their (otherwise valid) transactions. Elbar postures its suit as seeking a declaratory judgment that an avoidance action, if brought by the trustee, would not succeed. But the suit is actually a suit to declare that the sheriff's sale is valid, notwithstanding violation of the automatic stay. If Elbar had asked, in a straightforward way, for that relief, section 549 would clearly not apply. It is only by contorting the request for relief that Elbar can raise the issue of "good faith purchaser." This adversary proceeding is not brought by a trustee to avoid a transfer. Section 549 simply does not apply.

Elbar argues that state title records are important. But Elbar fails to note that there is no record title that indicates that Elbar is the owner of record. It is Elbar, not the Debtor, that is asking this bankruptcy court to dictate the content of state title records.

■■■■ Elbar fails to recognize that this transfer is specifically prohibited by federal law, section 362 of the Bankruptcy Code. Elbar's incantation of the concepts of "good faith purchaser" and "sanctity of state title law" are seductive phrases that misapply the very important, straightforward federal statute that applies. To make it more difficult, Elbar's argument fails to distinguish between pre-petition transfers[13] and post-petition transfers and

---

**11.** The stay might not have applied to the property or might have terminated by operation of law, *see* § 362(c).

**12.** The court in *In re D'Alfonso*, 211 B.R. 508, 518 (Bankr.E.D.Pa.1997) made these comments:

We make several observations regarding the *Stone* case. First, *Stone* did not involve a sale which the debtors argued was conducted in violation of § 362(a). The tax sale in issue resulted from tax deficiencies which arose postpetition and hence were not claims which arose before the commencement of that bankruptcy case. [*Stone*], 72 F.3d at 470. Therefore, in *Stone*, there was no clash between § 362 and § 549 at issue which would support a

narrower reading of § 549(c) than might otherwise be justified. Second, the debtor re-acquired the property from the tax sale purchaser. *Id.* at 468. It was left only in the rather unattractive posture of maintaining a suit to recover the value of the property paid by it from the local taxing authority. *Id.*

**13.** Elbar cites *Realty Portfolio, Inc. v. Hamilton*, 125 F.3d 292 (5th Cir.1997). But *Hamilton* deals with a *pre*-petition foreclosure and an action to avoid the transfer under § 544 of the Bankruptcy Code. It did *NOT* deal with a postpetition transaction prohibited by positive federal law, § 362 of the Bankruptcy Code. "Good faith purchaser" is relevant to § 544, but not to § 362.

confuses the concepts of "voidable" acts and actions "to *a* void" otherwise valid transfers. These distinctions are critical to proper analysis.

In 1940, in *Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940), the Supreme Court held that a post-petition foreclosure in violation of the bankruptcy stay by a state court was "not merely erroneous but ... beyond its power, void, and subject to collateral attack." [14]

In all fairness, the analysis ought to stop there. *Kalb* has not been overruled. It remains the law. If Elbar were to prevail in this adversary proceeding, the decision would be contrary to *Kalb.* The confusion in cases cited by Elbar results from the similarity of the words "void," "voidable," and "*a*voidable."

In 1989, the Court of Appeals for the Fifth Circuit issued *Sikes v. Global Marine, Inc.*, 881 F.2d 176 (1989). The court held that actions violative of the automatic stay are voidable, not void. In so holding, the Fifth Circuit was *not* ruling that an action must be brought "to avoid" the transfer. The court was simply using the correct terminology to indicate that, under some circumstances (like a bankruptcy court granting retroactive relief from the stay), an act that was originally null could be rendered valid by judicial act.

*Sikes* did not involve a postpetition foreclosure on property of the estate. *Sikes* was an appeal of the dismissal of a suit for personal injuries. The suit had been dismissed because it was filed in violation of the automatic stay, thus (in the opinion of the lower court) void. The Fifth Circuit

reversed, distinguishing between "void" and "voidable."

> By strict definition that which is void is nugatory and of no effect and cannot be cured; that which is voidable may be either voided or cured. [15]

To explain how it reached a decision that appeared to be contrary to the Supreme Court, the Fifth Circuit noted that under the Bankruptcy Code (as contrasted with the Bankruptcy Act which was the law when *Kalb* was decided), a bankruptcy judge may not only modify or terminate the stay, but the judge may also annul the stay. The court decided that the bankruptcy judge had annulled the stay, and therefore the suit could proceed. The court observed:

> When the Supreme Court decided *Kalb* in 1940, bankruptcy referees had the express statutory power only to modify or terminate the automatic stay. The power to annul the stay had not been authorized. Accordingly, where the violation of the stay was statutorily proscribed and an applicable exception did not exist, the violative action was void. That scenario no longer applies. [16]

Although *Sikes* is cited for the proposition that § 549 is an exception to § 362, that is *not* what it held. *Sikes* held that a violation of the § 362 stay was validated by annulment of the stay by the bankruptcy judge. Less than a year later, the Fifth Circuit emphasized that an action violative of the automatic stay can only become valid if the automatic stay is annulled.

> We recently held ... that actions taken in violation of an automatic stay are not *void,* but rather that they are merely

---

14. *Kalb*, 308 U.S. at 438, 60 S.Ct. 343.

15. *Sikes*, 881 F.2d at 178.

16. *Sikes*, 881 F.2d at 179, n. 2. It is noteworthy that the Fifth Circuit held that its result in *Sikes* did not conflict with *Kalb because* the

> stay was annulled, i.e., retroactively terminated. Implicitly, the Court concluded that if the stay was *not* annulled, then the act in violation of the stay would be void, of no effect, and incurable.

*voidable, because* the bankruptcy court has the power to annul the automatic stay pursuant to section 362(d).[17]

In the *Sikes* opinion, the Fifth Circuit presaged a problem with terminology and with interpretation of the word "voidable." In discussing the difference between "void" and "voidable," the court wrote:

> The distinction between the terms is much less precise and clear in practical usage. Courts considering whether actions taken in violation of the automatic stay are void or voidable have reached opposite conclusions.[18]

In 1993, the Court of Appeals for the Sixth Circuit decided *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905 (1993). In *Easley,* the Sixth Circuit found that seven courts of appeal had determined that an act violative of the automatic stay was void, not voidable. The Sixth Circuit noted that the Fifth Circuit was the lone exception, but in that opinion the Sixth Circuit went on to overrule its own prior decision and to join the Fifth Circuit in holding that actions violative of the stay are "invalid and voidable and shall be voided absent limited equitable circumstances."[19] The Sixth Circuit found the use of "void" and "voidable" to be so destructive of appropriate analysis that it discarded the term "void" in favor of "invalid."

> There is great looseness and no little confusion in the books in the use of the words *void* and *voidable,* growing, perhaps, in some degree out of the imperfection of the language, since there are several kinds of defects which are included under the expressions void and voidable, while there are but two terms to express them all. (citations omitted.) "Void" is defined as "an instrument or transaction [that] is nugatory and ineffectual so that nothing can cure it," ... "Voidable" is defined as "not void in itself" ... and as "capable of being adjudged void, invalid, and of no force," ... We think that "invalid" is a more appropriate adjective to use when defining an action taken against a debtor during the duration of the automatic stay. Like the word "void," "invalid" describes something that is without legal force or effect. However, something that is invalid is not incurable, in contrast to a void action which is incapable of being ratified.[20]

It is crucial to distinguish between "void"/"voidable," on the one hand, and "avoidable" on the other. *For present purposes,* it can be said that "void" and "voidable" deal with a transaction or occurrence that was invalid or had no legal effect when it occurred, but might be made valid by a subsequent judicial act or ratification.[21] By contrast, the bankruptcy trustee's power to "avoid" a transfer is the statutory power to set aside a transaction that was perfectly valid and legally effective when it occurred and remains valid

---

17. *Picco v. Global Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir.1990) (emphasis supplied).

18. *Sikes*, 881 F.2d at 178.

19. *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 911 (6th Cir.1993).

20. *Id.* at 909.

21. Although both "void" and "voidable" both deal with transactions or occurrences that were not valid when they occurred, the distinction between them is that if the transaction is absolutely "void", it can never become valid. If it is "voidable" it can be made valid by subsequent judicial decision. Until that decision is rendered, however, it is not valid. These terms apply generally in the law; they are not statutorily defined in bankruptcy law. The important point is that both words deal with events that were invalid when they occurred.

until there is a judicial ruling that sets it aside. The statute specifies the legal principles under which valid transactions may be set aside, and also specifies protections for parties that acted in good faith prior to the time that a court sets aside the transaction. That makes sense since parties *should* be protected from judicial decisions that invalidate transactions that were perfectly proper when accomplished. But obviously no party may rely on a transaction that was invalid when it occurred. Therefore, within the scope of the issues presented in this adversary proceeding, there is no reason to discuss the concept of "good faith purchaser." The constable's sale was contrary to federal law and was invalid when it occurred. Although it can be made valid by retroactive relief from the stay, no one has a right to rely on the transaction until and unless it is validated by court action.

The debate over "void" and "voidable" continues in the courts of appeal. But, in the end, the courts appear to reach the same result, albeit with different words.[22] An excellent example is found in *In re Schwartz*, 954 F.2d 569 (9th Cir.1992). In that case, the Ninth Circuit adamantly insists that actions taken in violation of the § 362 stay are void, thus disagreeing with the Fifth Circuit's majority analysis in *Sikes* that the transactions are voidable. The two circuits agree, however, that by annulling the stay, the bankruptcy court can give effect to a transaction that violated § 362 at the time that it took place. The difference between the two opinions is that the Ninth Circuit makes it clear that the debtor need not bring an avoidance action.[23] That position was not clear from the Fifth Circuit in *Sikes*, but the Fifth Circuit later reached the same conclusions in *Jones*, which is discussed below. Not-

---

**22.** Two circuits have found it unnecessary, so far, to join the fray. In *Winters v. George Mason Bank*, 94 F.3d 130 (4th Cir.1996) and in *Riley v. United States*, 118 F.3d 1220 (8th Cir.1997), the Fourth Circuit and the Eighth Circuit found it unnecessary to decide that issue. The rest of the circuits appear to fall into one of two camps. Some hold that an action taken in violation of the stay is void, but that the bankruptcy court can validate the transaction based on equitable principles or because of the court's power under § 362(d) to annul the stay. *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905 (6th Cir.1993); *Matthews v. Rosene*, 739 F.2d 249 (7th Cir.1984); *In re Schwartz*, 954 F.2d 569 (9th Cir.1992); *In re Calder*, 907 F.2d 953 (10th Cir.1990); *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir.1984). Other circuits take the position that the action that violates § 362 is voidable *because* the nullity (the transaction in violation of the stay) can be validated by retroactive relief from the stay. *Bronson v. United States*, 46 F.3d 1573 (Fed.Cir.1995); *In re Soares*, 107 F.3d 969 (1st Cir.1997); *Eastern Refractories Co. Inc. v. Forty Eight Insulations Inc.*, 157 F.3d 169 (2nd Cir.1998); *In re Siciliano*, 13 F.3d 748 (3rd Cir.1994); *In re Jones*, 63 F.3d 411 (5th Cir.1995).

**23.** In *Schwartz*, the Ninth Circuit held that requiring the debtor to bring an avoidance action to enforce the automatic stay would violate the statutory scheme of the Bankruptcy Code by undermining the fundamental debtor protections intended to result from the automatic stay.

"[T]he automatic stay plays a vital role in bankruptcy. It is designed to protect debtors from all collection efforts while they attempt to regain their financial footing .... In light of the automatic stay's purpose, the issue before us requires some analysis of the relevant policy considerations. Either the debtor must affirmatively challenge creditor violations of the stay, or the violations are void without the need for direct challenge. If violations of the stay are merely voidable, debtors must spend a considerable amount of time and money policing and litigating creditor actions .... Like the court in *Garcia*, we will not reward those who violate the automatic stay. The Bankruptcy Code does not burden the debtor with a duty to take additional steps to secure the benefit of the automatic stay." *In re Schwartz*, 954 F.2d at 571–572.

withstanding the agreement on result, the debate between "void" and "voidable" causes great mischief because it seduces one to think that § 549(c) should be considered in this analysis.[24]

■ The Fifth Circuit does not require a Debtor to bring an action to "avoid" a transaction or occurrence that violates § 362. All that the Fifth Circuit has said is that the transaction is not *absolutely null* because there are some circumstances (*i.e.* retroactive relief from the stay) under which the transaction might be validated.

The most recent decision of the Fifth Circuit should resolve all doubt. In 1995 the Court of Appeals for the Fifth Circuit recognized the confusion about *Sikes* and *Picco* and held that § 549 does not apply to postpetition foreclosures that violate the automatic stay. In *Jones v. Garcia*, 63 F.3d 411 (5th Cir.1995), the Debtor sought to set aside a foreclosure sale effected in violation of the automatic stay, but done without knowledge of the existence of the stay. The decision states:

> Perhaps our language in *Picco* and *Sikes* occasioned some confusion in the courts *a quo.* Our statement in *Picco* that actions taken in violation of the stay are voidable must be understood in context.

It is the effect of the stay *itself* which is voidable, subject to the broad discretion afforded a bankruptcy judge under section 362.[25]

By indicating that *Sikes* and *Picco* deal with whether the effects of the § 362 stay are voidable,[26] the Fifth Circuit suggests that § 549 does not apply. In explaining why it affirmed the district court's reasons, and *not* the bankruptcy court's reasons, the Fifth Circuit made that ruling explicit. *Jones* involved multiple filers (the Joneses.). The Garcias (creditors) obtained relief from the stay in the Jones's first bankruptcy case. On the eve of foreclosure, the Joneses dismissed their first case and filed another case eleven days later. The Joneses did not tell the Garcias about the second case until some months later, after the foreclosure. The Garcias brought a motion for retroactive relief from the stay. The bankruptcy court denied relief from the stay but held that the creditors were not subject to the stay because they were good faith purchasers. The Fifth Circuit found that *this analysis was incorrect.*[27] The correct analysis, according to the Fifth Circuit, is for the judge to determine whether the stay should be annulled. The Fifth Circuit held

---

24. *See* the bankruptcy court opinion of *In re Jones*, 172 B.R. 535 (Bankr.E.D.Tex.1994) which held that a good faith purchaser obtains good title notwithstanding the fact that the foreclosure sale violates § 362 of the Bankruptcy Code. The bankruptcy court held that § 549(c) applied because the sale was voidable, not void. However, the Fifth Circuit rejected this analysis on appeal. *See In re Jones*, 63 F.3d 411, 413 n. 6 (5th Cir.1995).

25. *In re Jones*, 63 F.3d at 412 n. 3.

26. Note: the Fifth Circuit word is "voidable," not "avoidable." Section 549 deals with "avoidable."

27. *See In re Jones,* 63 F.3d at 412–413.
The bankruptcy judge found that the Garcias were not subject to the automatic stay's

effect because they qualified for the good faith purchaser exemption· in 11 U.S.C. § 549(c). This provision serves as an exception to the discretionary authority of the bankruptcy trustee to "avoid" certain transfers of property under section 549(a). Section 549(a), however, expressly exempts from the trustee's authority transactions "authorized … by the court," including transactions such as that involved in this case which was retroactively authorized by the court under section 362(d). *The section 549(c) exception is therefore not implicated in this case; the transfer of the title at issue is not one of the class of transactions which section 549(a) allows the bankruptcy trustee to avoid. Id.* (emphasis supplied).

that the district court did not abuse its discretion when it considered the purchaser's lack of knowledge of the pending bankruptcy case in deciding whether to grant retroactive relief under § 362(d). The opinion cites *In re Calder* for the proposition that the bankruptcy court should "apply equitable considerations, at least where the creditor was without actual knowledge of a bankruptcy petition and the bankrupt's unreasonable behavior contributed to the bankrupt's plight." [28]

■ In the words of the Fifth Circuit, "[i]t is the effect of the stay *itself* which is voidable." [29] If the stay is annulled, the effect of the stay is voided and the act (otherwise in violation of the stay) is retroactively validated.[30] The lack of knowledge is but one equitable reason why the stay might be annulled.

*State Law*

In its memorandum, Elbar contends that, under state law, a valid transfer occurred at the time that the constable's sale took place, even though the constable's sale took place subsequent to the filing of the bankruptcy petition and violated Bankruptcy Code § 362. Elbar has cited no authority for that proposition.

Elbar cites authority for the proposition that a judicial execution sale is effective under state law when the auction takes place, regardless of when the deed is issued. From this Elbar asserts that state law would recognize that a transfer had taken place and that Elbar is a good faith purchaser. Elbar then cites a number of

federal opinions emphasizing the importance of state law with respect to real estate titles. It is most significant that none of these decisions involve a sale that took place in violation of positive federal law, § 362 of the Bankruptcy Code.

■ In fact, Texas law holds that a judicial sale in violation of Bankruptcy Code section 362 has no effect, even if the parties did not have notice of the stay, unless a bankruptcy judge grants retroactive relief from the stay. Texas jurisprudence is even more clear than federal jurisprudence on this point: *Continental Casing Corp. v. Samedan Oil Corp.,* 751 S.W.2d 499 (Tex.1988) (per curiam), *Huddleston v. Texas Commerce Bank–Dallas,* 756 S.W.2d 343 (Tex.App.-Dallas 1988), *Goffney v. Rabson,* 2001 WL 931551 (Tex. App.-Hous. [14 Dist.] 2001). The court's decision in the last cited case, rendered within the last few months, clearly sets forth the Texas rule:

> The filing of a bankruptcy petition triggers the automatic stay under § 362 of the Bankruptcy Code. *See* 11 U.S.C. § 362(a)(1); *Paine v. Sealey,* 956 S.W.2d 803, 805 (Tex.App.-Houston [14th Dist.] 1997, no writ). Any action taken against the debtor while the stay is in place is void and without legal effect. *Continental Casing Corp. v. Samedan Oil Corp.,* 751 S.W.2d 499, 501 (Tex.1988); *Paine,* 956 S.W.2d at 805. This is true regardless of whether R & B, Thompson, the Constable's office, or the trial court had notice of Goffney's bankruptcy filing at

---

**28.** *In re Calder,* 907 F.2d 953, 956 (10th Cir. 1990).

**29.** *In re Jones,* 63 F.3d at 412 n. 3.

**30.** *In re Jones,* 63 F.3d at 411–12. "In this case, the district court merely exercised its discretion to modify the stay ... *thereby validating* the foreclosure and transfer of title to the Garcias." *Id.* at 412 n. 3. (emphasis sup-

plied). Similar language is found in *Sikes.* "We further find that the bankruptcy court *validated* the filing [of the personal injury suit] when it granted ... relief from the stay ..." (emphasis supplied). *Sikes,* 881 F.2d at 180. *See also In re Albany Partners, Ltd.,* 749 F.2d 670 (11th Cir.1984), *cited with approval in In re Jones.*

the time that the execution sale took place. *Paine*, 956 S.W.2d at 805.

The bankruptcy court has the power to annul or modify the stay so as to validate an execution sale that violated the automatic stay, but this only applies if the bankruptcy court issues such an order. *See, e.g., Claude Regis Vargo Enters., Inc. v. Bacarisse*, 578 S.W.2d 524, 527–29 (Tex.Civ.App.-Houston [14th Dist.] 1979, writ ref'd n.r.e.). In this case, the bankruptcy court did not annul or modify the stay. Therefore, the dismissal of the bankruptcy case would not validate a sale that violated the automatic stay. *Huddleston v. Texas Commerce Bank–Dallas*, 756 S.W.2d 343, 345–46 (Tex.App.-Dallas 1988, writ denied).[31]

There is no conflict between federal law and state law. Texas law does not permit a purchaser at a judicial sale to acquire title if the sale violated § 362, even if the constable and the purchaser were ignorant of the bankruptcy filing. Both state and federal law hold that an action taken in violation of the automatic stay is without effect, regardless of whether the parties knew of the bankruptcy filing, unless the bankruptcy court grants retroactive relief from the stay. If one were to look to state courts for the rule, as Elbar asks the Court to do, one finds the same rule, only stated more clearly. Elbar argues that federal courts should not upset state law regarding title to real property. In this case, if the Court adopted Elbar's position, it would upset state title law that has been well established since 1988.

*Was the Constable's Sale Effective to Transfer Title to the Mortgage Note and Lien?*

In post-hearing motions and memoranda for reconsideration, Elbar argues that even if the Constable's sale was not effec-
tive to transfer title to the homestead, the sale was effective to transfer to Elbar the ownership of the mortgage note and mortgage lien against the property. Elbar cites no explicit authority for that proposition, but argues (i) that the automatic stay does not extend protection to parties other than the debtor, and (ii) that the mortgage lender was a party defendant in the tax sale.

Elbar is correct that the section 362 stay does not protect any party other than the debtor and does not protect any property other than property of the estate. As a general proposition, that is correct, although the proposition is not as absolute as Elbar contends. The stay is intended to benefit both debtors and creditors by assuring an equitable distribution of the debtor's assets and by preventing a race to the courthouse. *GATX Aircraft Corp. v. MV Courtney Leigh*, 768 F.2d 711, 716 (5th Cir.1985). Elbar has cited no dispositive, or even clearly persuasive authority in its favor. The jurisprudence cited by Elbar deal with suits against co-owners or co-debtors. There is no case that appears to deal with a tax judgment and sale effecting a transfer of a mortgage note and lien, notwithstanding the invalidity of the sale as to the debtor.

Perhaps more important, the very documentation advanced by Elbar is insufficient. "Fairbanks" is the defendant/mortgage lender in this adversary proceeding. "Contimortgage Corporation" was the defendant in the tax foreclosure. Although Contimortgage was originally a defendant in this bankruptcy proceeding, it was dismissed because it is a debtor in its own bankruptcy proceeding in another state. If Elbar were correct that the tax sale would effect a transfer of the mortgage note and lien, then it would appear that

---

**31.** *Goffney v. Rabson*, 2001 WL 931551, *2–*3 (Tex.App.-Hous. [14 Dist.] 2001).

the tax sale was a violation of *two* automatic bankruptcy stays: one in this case and one in the Contimortgage case. It may also be that Contimortgage was no longer the owner of the mortgage at the time that tax judgment was obtained; if so, constitutional issues of notice and due process might exist.

In addition, the tax judgment very clearly indicates, in at least two places, that "no monetary relief" and "no money judgment" are authorized against Contimortgage. In context, *with respect to the interests of the mortgagee,* the tax judgment is an *in rem* judgment against the debtor's homestead. Although it is clear that Elbar could have obtained rights against the mortgagee *if the sale of the homestead had taken place,* it is also clear that the judgment did not transfer ownership of the mortgage note and lien unless the sale of the homestead took place. That fact is underscored by the portion of the notice of Constable's Sale quoted in Elbar's post-hearing memorandum:

> Under the authority and by virtue of an Order of Sale ... I have ... seqized and levied upon, and will ... proceed to sell for cash ... all of the right, title and interest of each defendant *in the real property* as shown in the respective judgments. [Emphasis supplied.]

Thus, by Elbar's own admission, the constable did not purport to sell the mortgage note. Elbar asks this Court to substitute it for the mortgage note holder, entitled to all rights and subject to all counterclaims. The tax judgment and the Constable did not purport to sell *all* of those rights.[32] The *most* that Elbar could suggest is that the sale, if it were effective, transferred the lien without the note. In

context, that does not appear to be what the judgment purported to do.

Finally, the complaint in this adversary proceeding (as it was variously amended) cannot fairly be read to suggest that Elbar was attempting to obtain ownership of the mortgage note and lien. The complaint asks for the Court to declare that the Constable's sale was effective as to the Debtor's homestead and not avoidable because Elbar was a good faith purchaser. The Court has determined that the sale was void, and the Court declines to grant retroactive relief from the stay to validate the sale. Therefore the sale was void. It had no legal effect as to anyone.

*In Summary*

 This Court concludes that a foreclosure or judicial sale that violates the § 362 automatic stay has no legal effect, regardless of whether the parties knew that the statutory stay existed, unless the bankruptcy court retroactively annuls the stay and thereby authorizes (validates) the sale. The Court also concludes that retroactive annulment of the stay is an extraordinary remedy "subject to the broad discretion afforded a bankruptcy judge under section 362."[33]

In this case, for reasons set forth above, the bankruptcy court has declined to exercise its discretion to give Elbar retroactive relief from the automatic stay to validate the Constable's sale of the Debtor's home. The reasons that the Court has declined to exercise that authority, as set forth more fully above, include the fact that the Debtor is not a multiple filer, the fact that the Debtor was apparently in good faith in filing this case, the fact that she believed that the tax problem had been solved, the fact that it was apparently the mortgagee's fault that the sale was not canceled, the

---

**32.** Even assuming that the correct mortgage holder was named in the tax suit.

**33.** *In re Jones,* 63 F.3d at 412 n. 3.

fact that she was credible when she testified that she did not receive notices of creditors' meetings, and the fact that there was no contrary evidence whatsoever in the record.

Therefore, by separate judgment, the Court has and hereby does order the $31,000 returned to the Constable, to be returned to Elbar, and the tax sale proceedings to terminate without effect.[34] The property taxes on the residence will be paid through the chapter 13 plan.

---

**34.** As suggested above, the Court has allowed Elbar rehearing after rehearing because the Court is aware that Elbar seeks to make precedent on this issue. The Court has worked very hard: (i) to "get it right", and (ii) to give Elbar every opportunity to present evidence to complete its record. The time has come, however, to conclude the trial court proceedings and to let Elbar take its appeal, if that is what it wants to do. Right or wrong, this trial court has done as well as it can with the resources available. At the last rehearing on November 2, the Court and the parties addressed the fact that the funds deposited in the registry of the Court by the Constable had been returned to the Constable after the Court's original order and before Elbar had obtained a stay pending rehearing. The court gave Elbar time to contact the Constable and to present an agreed order to return the funds to the registry of the court, waive the Constable's interest in the funds, and pledge the funds as security for a stay pending appeal. None of that has happened in the last three weeks and Elbar has not filed any pleadings seeking additional time. Therefore, among other reasons for termination of this adversary proceeding, it is terminated for mootness (there are no funds remaining in the registry of the Court), and for want of prosecution by the plaintiff. Stay of judgment pending appeal is also denied for failure to post the security required at the November 2 hearing.