In re EDWIN A. EPSTEIN, JR.
OPERATING CO., INC.,
Involuntary Debtor.

No. 04–50106–H1–7.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

May 27, 2004.

Patrick D. Devine, Ware, Snow, Fogel & Jackson, LLP, William D. Wood, Adam T. Schramek, Fulbright & Jaworski, LLP, Houston, TX, for debtor.

Ronald J. Johnson, Attorney at Law, San Antonio, TX, for Supply Solutions of Texas, Inc., L.G.H. Inc. and Spinnsoft, Inc.

Richard L. Fuqua, Fuqua & Keim, LLP, Houston, TX, for Morningstar Gas, Inc.

Jonnie Patterson, Walker & Patterson, P.C., for Edward Abell, Jr. and Leo Le-Blanc.

Diane G. Livingstone, Office of U.S. Trustee, Nancy Lynne Holley, U.S. Trustee, Houston, TX, for U.S. Trustee.

## MEMORANDUM OPINION

MARVIN ISGUR, Bankruptcy Judge.

By separate orders, this Court has (i) voided a determination made by an arbitration panel; and (ii) authorized the Involuntary Debtor to prosecute an interlocutory appeal of that same order. This memorandum opinion sets forth the basis for those decisions.

### Factual background.

In 1995, the Edwin A. Epstein, Jr. Operating Co., Inc. ("EEOC") obtained interests/leases in several oil and gas wells in Starr County, Texas. At the time, EEOC was solely owned by Edwin A. Epstein, Jr. In 2001, EEOC transferred its assets to Morningstar Gas, Inc. ("Morningstar"), resigned as the working interest operator, and named Morningstar as the successor operator. Morningstar is wholly owned by Veronica Epstein (Edwin A. Epstein's wife).

On December 4, 2001, the David Clark Trust (the "Trust") executed on a judgment[1] against EEOC resulting in a sheriff's sale of EEOC's property interests in the leases of the oil and gas wells. On March 8, 2002, Baker Hughes Oilfield Operations, Inc. ("Baker Hughes") foreclosed on a security interest it held on the shares of EEOC. Baker Hughes is now the sole shareholder of EEOC.[2] After Baker Hughes installed new management in EEOC, Baker Hughes discovered the 2001 sheriff's sale.

Less than a month after the foreclosure by Baker Hughes, EEOC filed for relief under chapter 11 of the bankruptcy code.[3] EEOC then filed adversary proceedings against Morningstar and the Trust for turnover. The Trust settled this dispute and EEOC dismissed the bankruptcy. The terms of the settlement were that the Trust and EEOC would each have a percentage of ownership in the Trust *res*. The Trust *res* consisted of the oil and gas interests executed on by the Trust.[4]

On May 10, 2002, EEOC attempted to remove Morningstar as the operator of the wells and appoint PetroReal, Inc. as operator. After Morningstar refused to relinquish the property, EEOC sued in the 169th District Court of Bell County, Texas. The litigation was then sent to compulsory arbitration by the state court on December 2, 2002. On September 9, 2003, before the arbitration panel could hear the merits of the dispute, Morningstar filed a petition for relief under chapter 11 and the arbitration was stayed by 11 U.S.C. § 362.[5] On October 10, 2003, Bankruptcy Judge Greendyke modified the automatic stay to allow the arbitration to proceed. [Case no. 03–42936 docket no. 30].[6] The arbitration was again stopped on March 26, 2004 when an involuntary petition for relief was filed against EEOC.[7]

The filing of the involuntary petition under 11 U.S.C. § 303 invoked the automatic stay arising under 11 U.S.C. § 362. 2 COLLIER ON BANKRUPTCY ¶ 303.12 (15th ed.2004). Without seeking relief from the stay imposed by the EEOC involuntary petition, EEOC and Morningstar argued to the arbitration panel whether the automatic stay applied to the arbitration proceedings.

1. On August 22, 2001, Nabors Drilling USA assigned a judgment against EEOC to Roy L. Barnes, in his capacity as "Trustee." On August 17, 2001 however, Roy L. Barnes, Trustee, had already assigned all of his rights in and to the Nabor's judgment to David Clark, Trustee. The validity of the Clark/Barnes/Nabor's transactions is not addressed in this opinion.

2. Baker Hughes became the sole shareholder as the result of a Louisiana state court lawsuit in which EEOC and its president Edwin Epstein entered into a consent judgment and settlement agreement in which he pledged all of the stock in EEOC to Baker Hughes as collateral for the settlement payments. Thereafter, he defaulted on the payments and Baker Hughes foreclosed on the stock.

3. *In re Edwin Epstein Operating Company, Inc.*, Case No. 02–33726.

4. This distribution is contested by other parties in interest that claim there was no trust *res* because the Trust made a distribution of all Trust property.

5. All references to "§ 362" or the "automatic stay" refer to 11 U.S.C. § 362 and its subsections.

6. This modification allowed the arbitration to continue with the parties returning to the Court for confirmation of the Panel's orders.

7. This case was transferred to this Court on March 23, 2004 because its relatedness to the Morningstar case. [docket no. 6]. The Morningstar case had been transferred to this Court after Bankruptcy Judge Greendyke recused.

After considering legal arguments, the arbitration panel ruled that the stay did not apply to the pending action and proceeded to decide the merits of the dispute. Morningstar took the position that it could not participate without violating the stay. Accordingly, although Morningstar did not participate in the proceeding on the merits, the arbitration panel proceeded to hear the evidence presented by EEOC. Not surprisingly, EEOC prevailed.

Thereafter, on April 14, 2004, EEOC filed a Motion for Declaratory Ruling That No Stay Was In Effect, or Alternatively, For Order Annulling Stay, or Alternatively For Relief From Stay in its own case [docket no. 94].[8] The Court held an evidentiary hearing to determine EEOC's Motion for a Declaratory Ruling and made a preliminary determination that the automatic stay *did* apply to the arbitration proceeding. Nevertheless, the Court advised the parties that it would consider whether the Court should enforce or otherwise defer to the arbitration panel's determination.

The Court requested briefing on whether the arbitration panel had authority to determine the applicability of the automatic stay and if so, what level of deference should be given by the Court to the arbitration panel's determination that the stay did not apply.

After substantial briefing, these issues were taken up at a subsequent hearing in which the Court ruled that the automatic stay barred the panel from determining whether the automatic stay applied. EEOC later filed a motion for leave to appeal. The findings and conclusions in this memorandum opinion apply with equal force to the Court's determination to void the arbitration panel's decision and the Court's determination that EEOC should be allowed an interlocutory appeal. *See Federal Trade Comm'n. v. Enforma Natural Products, Inc.*, 362 F.3d 1204, 1216 n. 11 (9th Cir.2004); *Bodin v. Gulf Oil Corp.*, 877 F.2d 438, 440 (5th Cir.1989).

### *Was the arbitration proceeding subject to the stay?*

■ EEOC stridently argues in it briefs and memoranda that the arbitration proceeding was not stayed because § 362 only stays actions *against* the debtor that could harm the estate. EEOC cites *Taraska v. Carmel*, 223 B.R. 200 (D.Ariz.1998) for the proposition that the automatic stay does not prevent the debtor from prosecuting a case that it instigated before the bankruptcy because such actions are not actions against the debtor. *See id.* at 202. EEOC then asserts:

> The only issues before the arbitration panel were the appointment of a temporary operator being requested by David Clark and EEOC to preserve the properties. There was no claim even before the arbitration panel which could have negatively affected EEOC's estate, as Morningstar has already wrongfully misappropriated operations from EEOC.

[docket no. 7 at ¶ 43]. Therefore, EEOC reasons that because it had nothing to lose in the arbitration, the proceeding was not an action against the debtor.

While the logic of EEOC's argument is sound, it is inapposite to the evidence presented to the Court. Before EEOC was compelled to arbitration, Morningstar made a written demand for arbitration to EEOC.[9] Morningstar's written demand for arbitration requested the arbitration panel

---

8. On April 12, 2004, EEOC also filed a motion to confirm the arbitration order in the Morningstar case (as required by Judge Greendyke's order).

9. Morningstar also made a similar demand for arbitration upon David Clark.

to decide: (1) whether EEOC retained any title to the oil and gas; and (2) whether EEOC is liable for damages and the extent of those damages for:

    (a) violating its obligations and agreements to submit all disputes to arbitration;

    (b) interfering with the operation and development of the properties;

    (c) interfering with the contractual rights and prospective business relations of Morningstar;

    (d) making false and disparaging representations to third parties;

    (e) violating its obligations respecting the confidentiality of information about the operation and development of the properties; and

    (f) slander of title.

After this demand was made, the Bell County court issued its order compelling EEOC to arbitrate in accordance with the provisions of the specified letter agreement. This letter agreement expressly requires arbitration of all disputes "of any kind." Accordingly, the disputes raised in Morningstar's demand were included in the arbitration. Furthermore, title was put in issue by EEOC's pleadings in the state court suit and Morningstar's arbitration demand.[10]

In the EEOC/Morningstar arbitration proceeding, the arbitration panel was authorized by Judge Greendyke's order to consider all issues between the parties.[11] The only limitation on the arbitration was that the parties were instructed to return to the Court to confirm the arbitration panel's rulings. Therefore, at the time of the EEOC involuntary petition, there was no restriction on the arbitration panel's ability to adjudicate the disputes between Morningstar and EEOC. Furthermore, on February 5, 2004—after the Morningstar stay was modified—the arbitration panel issued a letter ruling outlining the issues it would decide.[12] This letter ruling evidences the arbitration panel's specific intent to determine the "ownership issues." Finally, the demand for arbitration and the governing arbitration agreement show that the arbitration panel had *carte blanche* to determine all issues between the parties.

After the stay was lifted and the arbitration panel began hearing the disputes between the parties, EEOC requested the arbitration panel replace Morningstar as operator with a temporary operator. This temporary operatorship issue was the subject of the hearing that was interrupted by the involuntary petition. EEOC contends that even if the overall action is stayed, this specific sub-issue was not subject to the automatic stay and therefore the action did not constitute an action against the debtor. This argument basically assumes that the stay can be selectively applied to portions of a proceeding resulting in certain issues in a single action being stayed while others are not.

The Court recognizes authority stemming from *First Wisconsin National Bank v. Grandlich Development Corp.* (the "*First Wisconsin* authority") which is cited for the proposition that debtor's counterclaims are not stayed because they are not proceedings against the debtor. *See e.g.*

---

**10.** *See Edwin A. Epstein, Jr. Operating Company, Inc. v. Morningstar Gas, Inc.,* Cause No. 193,331–D, In the District Court of Bell County, Texas, 169th Judicial District, EEOC original petition at ¶¶ 12, 18.

**11.** It should be noted that the order even encourages that parties and the panel to take up the title issue. [Case no. 03–42936 docket no. 30].

**12.** The letter ruling additionally leaves the door open for the parties to submit legal issues for the arbitration panel's determination at any time.

*Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1206 (3d Cir.1991) (citing *First Wisconsin National Bank v. Grandlich Development Corp.,* 565 F.2d 879 (5th Cir.1978)) *(per curiam).* Thus, the *First Wisconsin* authority envisions a bifurcation or severing of an action into stayed and non-stayed claims. While the Court recognizes that this approach may be appropriate for severable claims, it does not apply to situations involving non-severable compulsory counterclaims.

Federal Rule of Bankruptcy Procedure 7013 specifically incorporates FED. R.CIV. P. 13(a) to mandate parties to assert compulsory counterclaims in the principal suit. *See* FED. R. BANKR.P. 7013; *New York Life Ins. Co. v. Deshotel,* 142 F.3d 873, 882 (5th Cir.1998) ("[i]t is well settled that a failure to plead a compulsory counterclaim bars a party from bringing a later independent action on that claim") (citations omitted). Therefore the Court distinguishes the *First Wisconsin* authority to the extent that the authority does not consider the effect of a compulsory counterclaim on the stayed action because such claims present the Court with an inextricably intertwined action that must be heard as a unit. Additionally, the purpose of Rule 13 is to prevent multiple actions and to achieve resolution in single lawsuit of all disputes arising out of common matters. *See Southern Const. Co. v. Pickard,* 371 U.S. 57, 61, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962). Therefore, the Court finds it inapposite of the stated purpose of Rule 13 to divide the case into stayed/nonstayed segments when claims arise from the same transaction or occurrence as the underlying dispute. In any event, no severance occurred in the arbitration.

In the present case, the EEOC claims are subject to Morningstar's counterclaims discussed *supra.* Under FED. R. BANK. P. 7013 these counterclaims would be compulsory counterclaims because they arise out of the same transaction or occurrence and do not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. Therefore, the suit is of a type not considered in *First Wisconsin.*

Despite the Court's hesitancy to recognize the applicability of the *First Wisconsin* authority in situations involving compulsory counterclaims, even if the Court did accept it, the Court finds that EEOC's request for a temporary operator is merely an interlocutory request for relief and therefore not within the gambit of *First Wisconsin.* In this case, EEOC was seeking an interlocutory order replacing Morningstar temporarily as operator. Such interlocutory relief is a "continuation of a proceeding" under the plain language of § 362(a)(1) and not a separate proceeding that would be controlled by *First Wisconsin.*

However, even if the Court extended the *First Wisconsin* authority to compulsory counterclaim actions, and further found the interlocutory relief fit into this extension, the action would still be stayed because the Court finds that the temporary operator issue itself was subject to the stay along with the rest of the proceeding.

The temporary operatorship issue was EEOC's attempt to eject Morningstar as operator and insert PetroReal, because of the irreparable harm allegedly caused by Morningstar's continued operation of the leases. EEOC contends that this sub-issue was not an action against the debtor because if EEOC was not the operator, and the only relief sought was to appoint EEOC's selection as the operator, how could the action detract from the estate? Morningstar contends that there was more than just this temporary operatorship issue at the hearing because it was necessary to make findings on the title issue to

determine the temporary operatorship issue. This claim is strengthened by the arbitration panel's letter ruling made on the temporary operatorship issue. In the letter ruling, the arbitration panel considered the title issue and found EEOC has a working interest in the lease.

Consequently, EEOC's assertion that the arbitration panel was only considering the temporary operatorship issue is inconsistent with the actual results. Instead, the arbitration proceedings both in their entirety and in this particular interlocutory sub-issue pertained to matters affecting title and claims for affirmative relief against EEOC. Had Morningstar participated in the arbitration, the arbitration panel may have made findings that EEOC did not have a working interest in the lease. Such a finding could then serve as the basis for not only a denial of PetroReal as the temporary operator, but as the predicate for the other issue including the tortuous interference and other damage claims. These would constitute both actions against the debtor and actions against the estate under § 362(a)(1) and (6). Specifically § 362(a)(1) stays the "commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding *against the debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim *against the debtor* that arose before the commencement of the case under this title." *Id.* (emphasis added). The working interest decision in the operatorship hearing and the totality of issues before the arbitration panel were subject to the automatic stay.

The working interest decision by the arbitration panel forms the basis of the business tort claims against EEOC because Morningstar alleges EEOC is slandering Morningstar and interfering with its business through EEOC's title claims. Accordingly, an adverse decision on the working interest issue decided by the arbitration panel would serve as the predicate to the business tort claims. This in turn means that the hearing that EEOC asserts was not against the debtor, was really a decision on the pivotal fact issue to EEOC's ultimate liability.

### Did the arbitration panel have authority to determine whether the automatic stay applied?

■ Because the proceeding was subject to the automatic stay, the Court must consider whether the arbitration panel had the authority to determine the applicability of the stay.[13] The U.S. Constitution gives Congress plenary power over bankruptcy thus allowing Congress to limit the jurisdiction that courts can exercise over the person and property of a debtor who duly invokes the bankruptcy law. U.S. CONST., art. I, § 8; *Kalb v. Feuerstein*, 308 U.S. 433, 439, 60 S.Ct. 343, 84 L.Ed. 370 (1940). The current bankruptcy jurisdictional statute, 28 U.S.C. § 1334, defines the role of the federal district courts in bankruptcy. Section 1334(a) provides, "[e]xcept as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). Section 1334(b) then provides:

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall

---

**13.** Because it does not affect the outcome of the decision, the Court makes no finding as to the nature and extent of the arbitration panel's authority. Rather, the Court presumes the arbitration panel has the full grant of the authority of the state court referring the matter to arbitration.

have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(b).

In light of this statutory backdrop, the Court is faced with the issue of what other tribunals are vested with jurisdiction to determine whether the automatic stay applies.

EEOC quotes *Coho Resources,* for the proposition that " 'the majority of jurisdictions have held concurrent jurisdiction to decide whether the stay applies to prepetition state court actions' ".[14] *See* Supplemental Brief, [docket no. 19] at pg. 3 (citing *Chapman v. Bituminous Ins. Co.* (*In re Coho Resources, Inc.*), 345 F.3d 338, 345 n. 24 (5th Cir.2003)). The Court disagrees with EEOC's implicit expansion of *Coho.*

*Coho* presented the Court *inter alia* with the narrow issue of whether an action against a chapter 11 debtor's indemnitor and its insurance companies were stayed by the debtor's petition for relief under the bankruptcy Code. *See id.* at 344–45.

When Coho filed bankruptcy, Coho's insurers removed a garnishment against them to federal court. The federal court required the plaintiff/tort creditor to petition the bankruptcy court for permission to execute the state court judgment. *Id.* at 340. On appeal from the bankruptcy court, the district court allowed the tort creditor to execute against the insurers but not the debtor. *Id.* at 342.

On appeal from the district court, the insurer ineffectively argued that the district court improperly delegated appellate authority to the Mississippi state courts regarding the applicability of the automatic stay. *Id.* at 345. The Fifth Circuit denounced this proposition noting that state courts routinely rule on the applicability of the automatic stay in such situations. *Id.*

■ *Coho* stands for the proposition that state courts are authorized to rule on the effect of the automatic stay on third party non-debtors since the stay never applied to them in the first place. This is a much narrower reading than that assigned by EEOC.[15] Thus, while EEOC is correct that state courts have jurisdiction to rule on the applicability of the automatic stay to non-debtors, they do not have authority to do so when the automatic stay precludes the continuation of the proceeding against the debtor.

EEOC also cites *Sanders v. City of Brady (In re Brady, Texas Mun. Gas Corp.),* 936 F.2d 212, 217 (5th Cir.), *cert. denied,* 502 U.S. 1013, 112 S.Ct. 657, 116 L.Ed.2d 748 (1991) for the proposition that state courts are entitled to make decisions regarding bankruptcy court matters unless the Bankruptcy Code specifically disallows them. Of relevance, *Sanders* states:

> [T]he only aspect of the bankruptcy proceeding over which the district courts and their bankruptcy units have exclusive jurisdiction is "the bankruptcy petition itself." *See In re Wood,* 825 F.2d 90, 92 (5th Cir.1987). In other matters arising in or related to title 11 cases, *unless the Code provides otherwise,* state courts have concurrent jurisdiction . . . and bankruptcy courts are prohibit-

---

**14.** EEOC also cites numerous decisions stating the federal district courts have concurrent jurisdiction. The Court agrees with these cases because the district courts (from which the bankruptcy courts derive their jurisdiction) retain jurisdiction over the bankruptcy case. *See Picco v. Global Marine Drilling Co.,* 900 F.2d 846, 850 (5th Cir.1990).

**15.** EEOC elects to cite snippets of the opinion, without analyzing the facts of the case.

ed from relitigating these matters if the state courts have already resolved them *Sanders,* 936 F.2d at 218 (emphasis added; footnote omitted). In the context of the automatic stay the code *does provide otherwise.* It is undisputed that only a bankruptcy court has jurisdiction to terminate, annul or modify the automatic stay. 11 U.S.C. § 362(d); *see Farley v. Henson,* 2 F.3d 273 (8th Cir.1993); *Continental Cas., Co. v. Gullett,* 253 B.R. 796 (S.D.Tex.1999).

■ Thus, even though a state court has jurisdiction to unilaterally decide whether the automatic stay applies, and thus bind the bankruptcy court by that decision through *res judicata* or the *Rooker–Feldman doctrine,* the issue of whether a state court has jurisdiction does not affect the outcome of this case. The issue is whether the exercise of that concurrent jurisdiction was automatically stayed by act of Congress. "[B]ecause only an order of the bankruptcy court can authorize any further progress in the stayed proceedings, it follows that the continuation of the [stayed] proceeding can derive legitimacy only from the bankruptcy court order." *Casperone v. Landmark Oil & Gas Corp.,* 819 F.2d 112, 114 (5th Cir.1987). Consequently, EEOC's reliance on *Coho and Sanders* is misplaced because concurrent jurisdiction is not the controlling question.

### What is the effect of the automatic stay on the arbitration panel's power to determine whether the automatic stay applies?

■ The automatic stay is effective upon the filing of the voluntary or involuntary bankruptcy petition. *See* 2 COLLIER

ON BANKRUPTCY 303.12, (15th ed.2004); 11 U.S.C. §§ 303, 362(a); *In re Pierce,* 272 B.R. 198, 209 (Bankr.S.D.Tex.2001). It operates to enjoin the commencement or continuation of any judicial, administrative, or other proceedings against the debtor, enforcement of prior judgments, perfection of liens, and "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case." § 362(a)(6). Specifically, the automatic stay applies to arbitration proceedings.[16]

■ When proceedings are stayed, only an order of the bankruptcy court can annul, modify, or terminate the stay. *See In re Cueva,* 371 F.3d 232, 236–37 (5th Cir. 2004) ("[t]hrough the broad discretion granted bankruptcy courts ... § 362(d) provides that under certain conditions, when a party pursues retroactive annulment or modification of the automatic stay, a court may grant relief from a stay by 'terminating, annulling, modifying, or conditioning such stay.'") (quoting § 362); *see also Farley,* 2 F.3d at 276.

■ Before the court can grant this relief, the court must find that there is "cause" to lift/modify/annul the stay. *In re Pierce,* 272 B.R. at 209 (citing § 362(d)). If the court annuls the stay, the annulment has the effect of eliminating it (or terminating it retroactively). *See Sikes v. Global Marine, Inc.,* 881 F.2d 176, 178 (5th Cir.1989) ("[t]he power to annul authorizes retroactive relief even unto the date of the filing of the petition giving rise to the automatic stay"). Absent "cause" howev-

16. *See generally* Mette H. Kurth, Comment, *An Unstoppable Mandate and an Immovable Policy: The Arbitration Act and the Bankruptcy Code Collide,* 43 U.C.L.A. L.REV. 999 n. 102 (1996) (citing ABA Creditors' Rights Subcommittee Program, National Conference of Bankruptcy Judges, *The Effect of Bankruptcy*

on *Arbitration-and Vice Versa* 1 (1990); H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6296–97 (stating that the automatic stay under 11 U.S.C. § 362 encompasses arbitration proceedings)).

er, the stay continues as follows: "in case of act against property of estate, until property is no longer property of estate, or, in case of other acts, until earliest of closing of case, dismissal of case, or time discharge is granted or denied." *Browning v. Navarro*, 743 F.2d 1069, 1083 (5th Cir.1984) (citations omitted).[17]

■ While the stay is in place, an act in violation of the stay is voidable. *See Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178 (5th Cir.1989). While "voidable" appears to mean valid subject to being made invalid, it actually stands for the proposition that acts are invalid subject to subsequent validation. This distinction was endorsed by the Fifth Circuit's 1989 decision in *Sikes v. Global Marine, Inc.*, 881 F.2d 176 (5th Cir.1989). In *Sikes*, the court held that actions violative of the automatic stay are *voidable*, not void. In so holding, the court was simply using the correct terminology to indicate that, under some circumstances (like a bankruptcy court granting retroactive relief from the stay), an act that was originally null could be rendered valid by judicial act. *Id.* at 178. Where an action is violative of the stay and the action is not annulled, the "violation of the stay (is void), of no effect, and incurable." *In re Pierce*, 272 B.R. at 206 n. 16 (interpreting *Sikes*, 881 F.2d at 176). "And '[a]lthough it can be made valid by retroactive relief from the [automatic] stay, no one has a right to rely on the transaction until and unless it is validated

by court action.'" *Cueva*, at 236–37 (quoting *Pierce*, at 208).

■ As applied to the facts of this case, the arbitration panel's decision to make a determination regarding the applicability of the automatic stay was itself a "continuation of a proceeding" as prohibited by § 362(a)(1) that was subject to the automatic stay as discussed *supra*. Therefore, the action of the arbitration panel is invalid unless the Court annuls the violation of the stay. *See Id.; Sikes*, 881 F.2d at 176. Absent such an annulment however, the decision remains invalid and is now declared to be void. *See Cueva*, at 236–37; *Sikes*, 881 F.2d at 176.

### Does the Rooker–Feldman doctrine preclude the Court's consideration of stay issues?

■ After concluding that the arbitration panel's decision was stayed, the next issue is whether the arbitration panel's erroneous decision that the stay did not apply has a preclusive effect on the Court's ability to enforce § 362(a). This issue is often characterized as the *Rooker–Feldman* doctrine.

The *Rooker–Feldman* doctrine, named after two Supreme Court cases,[18] holds that the inferior federal courts lack jurisdiction to exercise appellate review over state court decisions. *See Reitnauer v. Tex. Exotic Feline Found., Inc. (In re Reitnauer)*, 152 F.3d 341, 343 (5th Cir.1998) (describing the doctrine). As the Fifth Circuit explains:

**17.** 11 U.S.C. § 362(c) states: Except as provided in subsections (d), (e), and (f) of this section—(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; and (2) the stay of any other act under subsection (a) of this section continues until the earliest of—(A) the time the case is closed; (B) the time the case is dismissed; or (C) if the case is a case under

chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.

**18.** *D.C. Ct.App. v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

[F]ederal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts. If a state trial court errs the judgment is not void, it is to be reviewed and corrected by the appropriate state appellate court. Thereafter, recourse at the federal level is limited solely to an application for a writ of certiorari to the United States Supreme Court.

*Weekly v. Morrow,* 204 F.3d 613, 615 (5th Cir.2000) (quotations and citations omitted).

When presented with the identical question of whether a state court decision on applicability of the automatic stay has a preclusive effect on the bankruptcy court, the *en banc* Ninth Circuit decision *In re Gruntz,* 202 F.3d 1074 (9th Cir.2000) reasoned that it did not. The opinion reads:

In sum, by virtue of the power vested in them by Congress, the federal courts have the final authority to determine the scope and applicability of the automatic stay. "The States cannot, in the exercise of control over local laws and practice, vest State courts with power to violate the supreme law of the land." *Kalb,* 308 U.S. at 439, 60 S.Ct. 343, 84 L.Ed. 370. Thus, the *Rooker–Feldman* doctrine is not implicated by collateral challenges to the automatic stay in bankruptcy.[19] *A bankruptcy court simply does not conduct an improper appellate review of a state court when it enforces an automatic stay that issues from its own federal statutory authority.* In fact, a reverse *Rooker–Feldman* situation is presented when state courts decide to proceed in derogation of the stay, because it is the state court which is attempting impermissibly to modify the federal court's injunction.

*Gruntz,* 202 F.3d at 1083 (emphasis added).

Like the Ninth Circuit, the Court finds enforcement of the automatic stay does not implicate the *Rooker–Feldman* doctrine because enforcement of § 362 is not a review of a state court decision, but rather a refusal to annul a violation of the stay. *Sikes,* 881 F.2d at 176. Consequently the arbitration panel's letter ruling does not have a preclusive effect on the bankruptcy court because the order was a nullity when made.

### *Should the Court annul the violation of the stay to retroactively validate the arbitration panel's decision?*

▮ EEOC alternatively requests the Court to retroactively annul the violation of the stay under § 362(d) to validate the arbitration panel's letter ruling. While the Bankruptcy Code grants a bankruptcy judge the equitable discretion to annul the automatic stay "for cause," it is unique because it asks the court to approve postpetition action which violated the automatic stay. 11 U.S.C. § 362(d); *In re Elder–Beerman Stores Corp.,* 195 B.R. 1012 (Bankr.S.D.Ohio 1996). In the present case, Morningstar refused to participate in the arbitration proceeding because it correctly determined the proceeding violated the automatic stay. Under these circumstances, the Court finds that it would be

**19.** *See Appeal of Gajkowski (In re Highway Truck Drivers & Helpers Local Union # 107),* 888 F.2d 293, 299 n. 9 (3d Cir.1989) (noting, in the context of a challenge to the automatic stay, that the *"Rooker–Feldman* doctrine does not preclude a collateral attack of state court proceedings or judgments in the context of an appeal involving an exclusive federal question"); *compare Reitnauer v. Texas Exotic Feline Found., Inc. (In re Reitnauer),* 152 F.3d 341, 344 (5th Cir.1998) ("applying *Rooker–Feldman* to bar district court review, in bankruptcy case, of state court judgment on state constitutional grounds)." *Gruntz,* 202 F.3d at 1083 n. 8.

inequitable to annul the stay violation to the detriment of a party that respected and relied on the stay. Therefore, the Court refuses to annul the violation of the automatic stay.

**The purpose of the stay and the policies of the Bankruptcy Code are furthered by the Court's interpretation.**

█ The purposes of the bankruptcy stay under § 362 "are to protect the debtor's assets, provide temporary relief from creditors, and further the equity of distribution among the creditors by forestalling a race to the courthouse." *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir.2003) (quoting *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir.1985)). This in turn protects creditors' postpetition expectations in a manner consistent with bankruptcy goal of equal treatment by halting prepetition proceedings that would otherwise result in a chaotic and uncontrolled scramble for debtor's assets in variety of uncoordinated proceedings in different courts. *See Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1068 (5th Cir.1986).

Consequently, if a non-federal forum's incorrect determination of whether the stay applies could bind a federal court to its determination of whether the stay applies, the bankruptcy court would lose its role as the "gatekeeper," exposing the debtor to the risk of defending suits in numerous forums. This is exactly the "chaotic and uncontrolled scramble" the Code was designed to prevent. This could create situations in which non-federal forums may inadvertently subvert the rights and goals of the Bankruptcy Code by violating a Congressionally-imposed injunction.

Therefore, the Court finds that EEOC's Motion for Declaratory Ruling (docket no. 7) is denied and the arbitration letter rul-

ing dated April 12, 2004 is declared void. Nevertheless, the Court recognizes (as set forth in this opinion) that EEOC's position is not without some limited support. Accordingly, the Court grants EEOC's motion for leave to appeal the order.