

# NUMBER 13-08-00263-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI—EDINBURG

_____

FEDERAL DEPOSIT INSURANCE CORPORATION
AS RECEIVER FOR WASHINGTON MUTUAL BANK,          Appellant,

v.

DAVID MARION WHITE,                                           Appellee.

_____

### On appeal from County Court at Law No. 1
### of Dallas County, Texas

_____

# MEMORANDUM OPINION

### Before Justices Benavides, Vela and Perkes
### Memorandum Opinion by Justice Perkes

The Federal Deposit Insurance Corporation, as receiver for Washington Mutual

Bank ("Washington Mutual"), appellant, appeals an adverse judgment for breach of

contract entered in favor of David Marion White, appellee. Washington Mutual also appeals the trial court's *sua sponte* order of dismissal for lack of jurisdiction of its abuse of process counterclaim. We affirm the judgment of the trial court, in part, and reverse and remand, in part.

## I. BACKGROUND[1]

In 1997, White purchased his home at 7605 Lakecrest Circle, Irving, Texas, obtaining a purchase money mortgage, which eventually was purchased by Washington Mutual. Beginning in 2000, White fell in arrears on his mortgage note, and thereafter never caught up with his arrearages. Foreclosure proceedings[2] began in October 2000. However, in accordance with parties' settlement agreement,[3] they were not completed until October 5, 2004. The settlement agreement states, in relevant part:

> White further agrees to leave the house at 7605 Lakecrest, Irving, Texas by not later than October 25, 2004. White has already executed documents to permit the issuance of a writ of execution on that date if he has not left the premises of 7605 Lakecrest as part of this settlement agreement.

On October 12, 2004, White returned to the home, and saw that his property had been moved around in the house, and that items were missing. White encountered Coldwell Banker's agent Ray Jones taking pictures of White's property. Jones informed

---

[1] The case is before this Court on transfer from the Fifth Court of Appeals in Dallas pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §73.001(West 2005).

[2] Fleet Mortgage Corporation owned the mortgage note when the foreclosure proceedings began. Washington Mutual was the successor owner and completed the foreclosure. A special warranty deed, dated November 5, 2004, transferred the property from Washington Mutual to Federal National Mortgage Association (Fannie Mae).

[3] After White's last bankruptcy was dismissed, Washington Mutual noticed foreclosure on the home for August 3, 2004. On the day set for foreclosure, White obtained a temporary restraining order from a Dallas County Court at Law to stop the foreclosure. That lawsuit was settled at a mediation held on September 21, 2004. The settlement agreement was executed by White on October 8, 2004, and by Washington Mutual on October 20, 2004. The settlement agreement forms the basis of White's breach of contract claim.

White that Fannie Mae had taken possession of the home and that he was getting it ready for re-sale. He also informed White that he had re-keyed the locks, and that he did not have permission to give White a key at that time. Jones told him that he would check with his supervisors about giving him access to the home so that White could retrieve his belongings.[4]

After that encounter, White twice attempted to reach Jones about obtaining access to the home. On October 26, 2004, Jones finally returned White's call and informed him that he could pick up a key to the house. When White went to obtain the key at Jones' office, Jones agreed to allow White to have the key until October 29, 2004. On the morning of October 29, White went to the house to begin moving his property. Upon arrival, he saw a Constable's notice posted on the door, stating that White was to appear in the Justice of the Peace Court on November 4, 2004, to answer to the forcible entry and detainer of the home. This notice led White to believe he had until November 4 to move out of the premises.

On November 1, 2004, White returned to move his property out of the home. Upon arrival, White saw some of his property sitting in the driveway. He then realized that his property had been set out sometime on Friday, October 29, 2004, as a result of the agreed writ of execution. By the time he arrived, a great portion of his property was already missing.

White sued Washington Mutual and Coldwell Banker, claiming breach of contract, conversion, invasion of privacy, contort (breach of tort duty), negligence, gross

---

[4] On October 12, 2004, White was not living in the house; however, many of his belongings still remained in the premises.

negligence, and common law fraud. White claimed Washington Mutual breached the settlement agreement by barring access to the house prior to October 25, 2004, which was the date he agreed to vacate the home pursuant to the settlement agreement.

Washington Mutual brought a counterclaim against White alleging abuse of process. Washington Mutual asserted that White's pursuance of several bankruptcies and state court proceedings unreasonably delayed the foreclosure. Washington Mutual also asserted the affirmative defense of set-off. The trial court *sua sponte* entered an order dismissing Washington Mutual's abuse of process counterclaim for lack of jurisdiction. The order, however, does not mention the affirmative defense of set-off being asserted by Washington Mutual.

The jury found that Washington Mutual and White agreed Washington Mutual would allow, and Washington Mutual had the obligation to permit, White the right to go in and out of the premises, and that he would leave the house no later than October 25, 2004. Although the jury found that both Washington Mutual and White failed to comply with the agreement, they further found Washington failed to comply first, and awarded White $100 for sentimental value. The jury also found that Washington Mutual had an obligation to inform Coldwell Banker that White had a right to go in and out of the premises, and was to leave the house by no later than October 25, 2004. The jury found that Washington Mutual Mutual failed to perform its duty, and awarded White $5,000 for market value, and $1,250 for sentimental value.[5] The jury found that a

---

[5] The jury also found that Coldwell Banker was not acting with the authority or apparent authority of Washington Mutual "at the time and on the occasion in question," and that Coldwell Banker, and not Washington Mutual, converted White's personal property. The jury awarded White $5,000 from Coldwell Banker for market value, and $1,250 for sentimental value. Based upon the jury's verdict, the trial court entered judgment against Coldwell Banker in the sum of $6,250 for actual damages. Coldwell Banker did not appeal the trial court's judgment.

reasonable attorney's fee would be the sum of $25,000 for preparation and trial. Based upon the jury's verdict, the trial court entered judgment against Washington Mutual in the sum of $100 for actual damages and $25,000 for attorney's fees.

## II. Issues Presented

By five issues, Washington Mutual argues that: (1) the trial court erred by dismissing Washington Mutual's counterclaim and set off against White, *sua sponte,* on jurisdictional grounds; (2) the trial court erred by allowing the jury to return a verdict for damages caused by the lawful execution of an agreed writ of possession; (3) the trial court erred by failing to dismiss the judgment against Washington Mutual after Coldwell Banker paid the judgment in full; (4) the trial court erred by allowing the jury to award damages for breach of obligations which did not appear in a contract which contained a merger clause; and (5) the trial court showed bias against Washington Mutual and its counsel and should not be permitted to preside at any retrial.

## III. Dismissal Of Washington Mutual's Counterclaim

In its first issue, Washington Mutual argues that the trial court erred by dismissing, *sua sponte,* on jurisdictional grounds, Washington Mutual's counterclaim and set off against White. Washington Mutual filed a counterclaim against White for abuse of process and an affirmative defense of set-off, alleging that White's abusive bankruptcy and state court litigation resulted in a four-year delay in foreclosure, thereby causing financial damages.[6]

---

[6] The trial court's *sua sponte* order of dismissal was signed on January 23, 2007, and makes no mention of Washington Mutual's set-off defense. The record before us indicates that no motions were

5

**A. Standard of Review**

Whether a court has subject-matter jurisdiction is a question of law, subject to de novo review. *Graber v. Fuqua,* 279 S.W.3d 608, 631 (Tex. 2009); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998), *cert. denied,* 526 U.S. 1144 (1999). When reviewing a trial court order dismissing a cause for want of jurisdiction, Texas appellate courts construe the pleadings in the plaintiff's favor and look to the pleader's intent. *County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex.2002); *Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.,* 19 S.W.3d 393, 404 (Tex.2000). The court must presume in favor of the jurisdiction unless lack of jurisdiction affirmatively appears on the face of the petition. *Peek v. Equip. Serv. Co. of San Antonio*, 779 S.W.2d 802, 804–05 (Tex. 1989); S*mith v. Texas Improvement Co.,* 570 S.W.2d 90, 92 (Tex. Civ. App.—Dallas 1978, no writ). Subject-matter jurisdiction is fundamental and may be raised for the first time on appeal. *Tex. Assoc. of Bus. v. Tex. Air Control Bd*., 852 S.W.2d 440, 445 (Tex. 1993). If a claim is not within a court's jurisdiction, and the impediment to jurisdiction cannot be removed, then it must be dismissed. *Am. Motorists, Ins. Co. v. Fodge,* 63 S.W.3d 801, 805 (Tex. 2001).

**B. Analysis**

Washington Mutual relies on *Fuqua v. Graber* for its position that federal bankruptcy law does not preempt the trial court from hearing its claim for abuse of process. *See Fuqua v. Graber*, 158 S.W.3d 635, 639 (Tex. App.—Corpus Christi 2005) *aff'd*, 279 S.W.3d 608 (Tex. 2009). Federal preemption of state law causes of action is

---

filed with the trial court seeking the counterclaim's dismissal for want of jurisdiction, and no hearing was held regarding this action. The record contains no explanation or rational for the trial court's order.

appropriate if Congress expressly legislates such preemption or if Congressional intent can be implied from the federal legislation. *See English v. Gen. Elec. Co.,* 496 U.S. 72, 78–79 (1990). If Congress has legislated comprehensively and occupied an entire field of regulation, leaving no room for supplemental state regulation, preemption is implied. *See id.* at 79; *see also Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363, 372 (2000). State law is also preempted to the extent it actually conflicts with federal law or interferes with the accomplishment and execution of Congressional objectives. *Fuqua,* 158 S.W.3d at 639.

Although Congress has given the federal district courts original and exclusive jurisdiction of all cases under the Bankruptcy Code, Title 11 of the United States Code, the district courts do not have exclusive jurisdiction of all civil proceedings *arising under* Title 11 or *arising in or related to* cases under Title 11 (emphasis added). *See* 28 U.S.C.A. §§ 1334(a), (b) (West 2004); *see also In re Brady, Mun. Gas Corp. v. City of Brady,* 936 F.2d 212, 218 (5th Cir. 1991); *In re Epstein*, 315 B.R. 591, 598–88 (Bankr. S.D. Tex 2004). Thus, the district courts and their bankruptcy units have exclusive jurisdiction only over the bankruptcy petition itself. *See In re Wood,* 825 F.2d 90, 92 (5th Cir. 1987). In other matters "arising in" or "related to" Title 11 cases, unless the bankruptcy code provides otherwise, state courts have concurrent jurisdiction. *See In re Brady,* 936 F.2d at 218; *In re Epstein,* 314 B.R. 591 at 599-600.

In its counterclaim, Washington Mutual complains that White abused bankruptcy court and state court process, most notably automatic bankruptcy stays and state court restraining orders, as a pattern and practice, so as to wrongfully remain a resident in the home for more than four years. Washington Mutual asserts that, during that time period,

7

White was unable to pay his mortgage payment, insurance premiums, and real estate taxes. In this regard, a bankruptcy order, dated May 5, 2004, dismissed the most recent bankruptcy case with prejudice to re-filing for 180-days, and without discharging the creditors. White filed the instant lawsuit in 2005, and Washington Mutual filed its counterclaim in 2006.[7] As such, Washington Mutual's state law claim for abuse of process did not interfere with the bankruptcy court's jurisdiction. Washington Mutual's claim for abuse of process constitutes a matter "related to" White's bankruptcy cases. Therefore, the trial court's jurisdiction is not precluded as to Washington Mutual's counterclaim. *See* 28 U.S.C.A. §§ 1334(a), (b) (West 2004); *In re Brady,* 936 F.2d at 218.

With respect to Washington Mutual's claim that the trial court erred in dismissing its affirmative defense of setoff, we note that the trial court's order does not mention this affirmative defense, and that no such argument and ruling was made in the trial court. We further note that Washington Mutual does not develop this argument with thorough discussion or analysis in its brief. Without further discussion and citations to the record or authority, we conclude Washington Mutual has inadequately briefed this argument and has waived it. *See* TEX. R. APP. P. 38.1(i).

We hold that the trial court had jurisdiction over Washington Mutual's abuse of process counterclaim.[8] We sustain the portion of Washington Mutual's first issue that

---

[7] White's Original Petition and Application for Temporary Restraining Order, which resulted in the settlement agreement, was filed on October 8, 2004. Washington Mutual contends that this application for temporary restraining order was also an abuse of process.

[8] We express no opinion regarding the viability of Washington Mutual's counterclaim. The settlement agreement contains a merger clause which states the agreement includes "the entire agreement between the parties." In addition, the settlement agreement states:

8

pertains to Washington Mutual's counterclaim. We overrule the portion of Washington Mutual's first issue that pertains to set-off.

### IV. DAMAGES FOR LAWFUL EXECUTION OF A WRIT OF POSSESSION

In its second issue, Washington Mutual argues that the trial court erred in allowing the jury to return a verdict for damages caused by the lawful execution of an agreed writ of possession. Washington Mutual cites *Campos v. Investment Management Properties,* 917 S.W.2d 351 (Tex. App.—San Antonio 1996, writ denied), as support for its position that damages are not allowed if a writ of possession is executed lawfully.

In *Campos,* the tenant filed suit for conversion and negligence against the landlord based on the landlord's action in executing a writ of possession. The tenant's property was placed on the front lawn. Soon after, it began to sleet and snow, which damaged the tenant's property. The appellate court affirmed the trial court's grant of summary judgment to the landlord, holding that the landlord had placed the property on the front lawn pursuant to a valid writ of possession and had no duty to care for property once it was removed from the premises. *Campos,* 917 S.W.2d at 355.

*Campos* is distinguishable from the present case. In this case, Washington Mutual and White executed a settlement agreement which controlled the rights and

---

The parties warrant that they have read this agreement and have conferred with their respective attorneys where that has been necessary and understand that this is a compromise and settlement agreement and will settle all claims between the parties arising out of any matters between them, ***save only any claims arising out of the breach of this agreement***, and that they enter into this agreement of their own free will without reliance on any representations not contained herein.

(Emphasis added).

9

obligations of the parties. Pursuant to the settlement agreement, White had until October 25, 2004 to remove his property from the house, at which time an agreed writ of possession was to occur. Washington Mutual, however, effectively "locked out" White from the home from October 12 through October 26, and White was unable to remove his property. The act of depriving White access to the home until October 26 formed the basis of White's breach of contact cause of action, whereas the act of executing a valid writ of possession was the basis of the cause of action in *Campos*. Therefore, the trial court did not err in allowing the jury to return a verdict for damages. We overrule Washington Mutual's second issue.

### V. DOUBLE RECOVERY

In its third issue, Washington Mutual argues that the trial court erred when it failed to dismiss the judgment against it after Coldwell Banker paid its portion of the judgment. Washington Mutual asserts that when White accepted payment in full from Coldwell Banker, he elected his remedy, and permitting White to further recover would result in a double recovery and violate the one-satisfaction rule.

Pursuant to Texas Rules of Civil Procedure, Rule 48, a party may plead "as many separate claims or defenses as he has regardless of consistency." The "one satisfaction rule" provides that a plaintiff cannot obtain more than one recovery for the same injury. *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.,* 959 S.W.2d 182, 184–85 (Tex.1998); *Borden v. Guerra,* 860 S.W.2d 515, 528 (Tex. Civ. App.—Corpus Christi 1993, writ dism'd by agr.) (citing *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 7 (Tex. 1991)). This rule is based on the principle that, with only one injury, "there can, in justice, be but one satisfaction for that injury." *Id.* When a plaintiff pleads

10

alternate theories of liability, a judgment that awards damages based upon both theories does not amount to a double recovery if the theories of liability arise from two separate and distinct injuries, and there has been a separate and distinct finding of damage on both theories of liability. *Birchfield v. Texarkana Mem'l Hosp.,* 747 S.W.2d 361, 367 (Tex. 1987); *Berry Prop. Mgmt, Inc. v. Bliskey,* 850 S.W.2d 644, 664–66 (Tex. App.—Corpus Christi 1993, writ dism'd by agr.).

An impermissible double recovery occurs when there is only one injury, the theories of liability are mutually exclusive, or there are no separate damages findings based on the alternate theories of liability. *See Southern Cty. Mut. v. First Bank & Trust,* 750 S.W.2d 170, 173–174 (Tex. 1988); *Birchfield,* 747 S.W.2d at 367. When confronted with a situation of double recovery, the affirmative defense of "election of remedies," under certain circumstances, bars a person from pursuing two inconsistent remedies. *See generally Bocanegra v. Aetna Life Ins. Co.,* 605 S.W.2d 848, 850–52 (Tex. 1980).[9] The *Bocanegra* court articulated the following test for the election doctrine to bar relief: (1) one successfully exercises an informed choice; (2) between two or more remedies, rights, or states of facts; (3) which are so inconsistent as to; (4) constitute manifest injustice. *Id.; Medina*, 927 S.W.2d at 600.

White filed suit seeking damages from Washington Mutual and Coldwell Banker on alternative theories for breach of contract and conversion. The jury awarded White $100.00 in "sentimental value" damages and $25,000 in attorney's fees for Washington Mutual's breach of the settlement agreement, which was caused by its failure to permit

---

[9] The widely criticized doctrine of election of remedies which combines elements of estoppel, ratification, and unjust enrichment (*Bocanegra v. Aetna Life Ins. Co.,* 605 S.W.2d 848, 851 (Tex. 1980) survives in several branches of the law to prohibit inconsistent legal positions that may produce manifest injustice. *Bocanegra,* 605 S.W.2d at 850; s*ee also Medina v. Herrera*, 927 S.W.2d 597, 600 (Tex. 1996).

White to timely enter the home to remove his belongings. The jury also awarded White $5,000.00 in "market value" damages and $1,250.00 in "sentimental value" damages for Coldwell Banker's conversion of White's property.

We hold that the damages awarded to White constitute two separate and distinct injuries, with separate and distinct findings of damages on different theories of liability. *See Birchfield,* 747 S.W.2d at 367. Further, White's damages are not so inconsistent as to constitute a manifest injustice. *See Bocanegra,* 605 S.W.2d at 850. We overrule Washington Mutual's third issue.

## VI. PERMISSIBILITY OF THE BREACH OF CONTRACT ISSUE

In its fourth issue, Washington Mutual argues that the jury should not have been permitted to consider a breach of contract issue because the settlement agreement did not include any provision that obliged it to secure the right of ingress and egress to White or any provision that obligated Washington Mutual to notify Coldwell Banker that White had the right to remain in the property until October 25, 2004. Washington Mutual also argues that the comprehensive merger clause provision contained within the settlement agreement prevents the consideration of any duty or obligation by Washington Mutual that is not expressly set out in the contract.

Error in the charge is reviewed under an abuse of discretion standard. *Texas Dept. of Human Serv. v. E.B.,* 802 S.W.2d 647, 649 (Tex.1990). To establish reversible error, the complaining party must show the trial court acted arbitrarily, unreasonably, or without consideration of guiding rules and principles. *Downer v. Aquamarine Operators Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159 (1986). "[A] clear

12

failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion...." *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992).

Generally, a written instrument presumes that all prior agreements relating to the transaction have been merged into it and it will be enforced as written and cannot be added to, varied, or contradicted by parol testimony. *See Baroid Equip., Inc. v. Odeco Drilling, Inc.,* 184 S.W.3d 1, 13 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *Wilkins v. Bain,* 615 S.W.2d 314, 315 (Tex. Civ. App.—Dallas 1981, no writ). This rule is particularly applicable where the written contract contains a recital that it contains the entire agreement between the parties or a similarly worded merger provision. *See Weinacht v. Phillips Coal Co.,* 673 S.W.2d 677, 679 (Tex. App.—Dallas 1984, no writ). However, in case of an incomplete instrument, an exception to the parol evidence rule applies, even though fraud, accident, or mistake is not shown. *Robertson, Inc. v. Webster,* 679 S.W.2d 683, 688 (Tex. App.—Houston [1st Dist.] 1984, no writ) (concluding oral agreement regarding time of delivery of pickup truck to customer was not inconsistent with terms of agreement between car dealer and customer, for purposes of determining whether dealer's false representations regarding the delivery date were actionable under the Deceptive Trade Practices - Consumer Protection Act, notwithstanding the presence of a merger clause in the sales order form, where the instrument itself referred to "delivery" numerous times and yet contained no delivery date).

A duty to cooperate is implied in every contract in which cooperation is necessary for performance of the contract. This implied duty requires that a party to a contract may not hinder, prevent, or interfere with another party's ability to perform its duties

13

under the contract. *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 770 (Tex. App.--Dallas 2005, pet. denied); *Bank One, Tex., N.A. v. Stewart,* 967 S.W.2d 419, 435 (Tex. App.—Houston [14th Dist.] 1998, pet. denied); *Hallmark v. Hand,* 833 S.W.2d 603, 610 (Tex. App.—Corpus Christi 1992, writ denied). Additionally, when one party to a contract, by wrongful means, prevents the other party from performing, such an action by the party at fault constitutes a breach of contract. The effect of such a breach is not only to excuse performance by the injured party, but also to entitle it to recover for any damage it may sustain by reason of the breach. *Smith v. Lipscomb*, 13 Tex. 532, 538 (1855); *Arceneaux v. Price*, 468 S.W.2d 473, 474 (Tex. Civ. App.—Austin 1971, no writ); *S.K.Y. Inv. Corp. v. H. E. Butt Grocery Co.*, 440 S.W.2d 885, 889–90 (Tex. Civ. App.—Corpus Christi 1969, no writ).

The settlement agreement expressly allowed White to remain in the home until October 25, 2004. Washington Mutual had a contractual duty and an implied duty to not hinder, prevent, or interfere with White's possession of the home and his ability to remove his property from the home during the stated time period. It would be inconsistent with the settlement agreement and its merger clause to infer that Washington Mutual did not have an obligation to give White the right of ingress and egress to the house until said date.

We hold that the trial court did not abuse of discretion by submitting the issue of breach of contract to the jury. We overrule Washington Mutual's fourth issue.

14

## VII. Was the Trial Judge Biased?

In its fifth issue, appellant argues that this case should be remanded for retrial before another judge because of the trial court's bias against Washington Mutual and in favor of White.

The Texas Supreme Court has held that objections to a trial court's alleged improper conduct or comment must be made when it occurs if a party is to preserve error for appellate review, unless the conduct or comment cannot be rendered harmless by proper instruction. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *State v. Wilemon,* 393 S.W.2d 816, 818 (Tex.1965). Washington Mutual has failed to indicate where this issue has been preserved for appeal, and has not explained how any comments or rulings made by the trial judge were incurable or would excuse appellant's failure to preserve error. Washington Mutual has waived this issue. We overrule Washington Mutual's fifth issue.

## VIII. CONCLUSION

Having partially sustained appellant's first issue, we reverse the trial court's judgment dismissing appellant's counterclaim for abuse of process. We remand this portion of the case to the trial court for proceedings consistent with this opinion. We affirm the remainder of the trial court's judgment.

_____
Gregory T. Perkes
Justice

Delivered and filed the
20th day of October, 2011.

15